IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRACKTHINGS LLC, ) | |
| ) | C. A. No.: 22-981-RGA-JLH |
| Plaintiff, ) | (CONSOLIDATED) |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| NETGEAR, INC., ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT NETGEAR INC.'S OBJECTIONS TO REPORT AND RECOMMENDATION ON CLAIM CONSTRUCTION

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Taylor E. Hallowell (No. 6815)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

COOLEY LLP
Joseph M. Drayton
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Reuben Chen
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Naina Soni
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
(202) 842-7800

*Attorneys for NETGEAR, Inc.*

Dated: August 16, 2023

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. STANDARD OF REVIEW ................................................................................................. 1

III. OBJECTIONS TO RECOMMENDED CLAIM CONSTRUCTIONS ............................ 1

    A. An "ad-hoc wireless network" is not the same as a "wireless network." ............... 1

    B. "Computational unit" is subject to means-plus-function and is indefinite. ........... 3

        1. The "computational unit" terms do not connote sufficient structure for performing the claimed functions as required by Federal Circuit law............................................................................................................... 3

        2. The "computational unit" terms are indefinite because there are no algorithms disclosed for performing the claimed functions. ..................... 6

IV. CONCLUSION .................................................................................................................... 7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Ground Information Systems, Inc. v. Life360, Inc.*,
  830 F.3d 1341 ...........................................................................................................................6

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008)................................................................................................6

*Blackboard, Inc. v. Desire2Learn, Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009)................................................................................................6

*Dyfan, LLC v. Target Corp.*,
  28 F.4th 1360 (Fed. Cir. 2022) .............................................................................................4, 5

*Egenera, Inc. v. Cisco Sys., Inc.*,
  972 F.3d 1367 (Fed. Cir. 2020)............................................................................................3, 4

*EON Corp. IP Holdings LLC v. AT&T Mobility LLC*,
  785 F.3d 616 (Fed. Cir. 2015)..................................................................................................6

*Haliburton Oil Well Cementing Co. v. Walker*,
  329 U.S. 1 (1946)......................................................................................................................6

R&R, *Samsung Electronics America, Inc. v. Prisua Engineering Corp.*,
  948 F.3d 1342 (Fed. Cir. 2020).............................................................................................4, 5

*Rain Computing, Inc. v. Samsung Electronics America, Inc.*,
  989 F.3d 1002 (Fed. Cir. 2021)................................................................................................6

*Spring Windows Fashions LP v. Novo Indus., L.P.*,
  323 F.3d 989 (Fed. Cir. 2003)..................................................................................................3

*St. Clair Intell. Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*,
  691 F. Supp. 2d 538 (D. Del. 2010).........................................................................................1

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015) (en banc).......................................................................3, 4, 6

*WMS Gaming, Inc. v. Int'l Game Tech.*,
  184 F.3d 1339 (Fed. Cir. 1999)................................................................................................6

**Statutes**

28 U.S.C.
  § 636(b)(1) ................................................................................................................................1
  § 636(b)(1)(C)...........................................................................................................................1

# TABLE OF AUTHORITIES
## continued

**Page(s)**

**Other Authorities**

Fed. R. Civ. P.
   72(b) ...................................................................................................................................1
   72(b)(3) ..............................................................................................................................1

**I.      INTRODUCTION**

Defendant NETGEAR, Inc. ("NETGEAR") respectfully objects to the recommended constructions of two disputed claim terms in the August 2, 2023 Report and Recommendation ("R&R") (D.I. 146).

**II.     STANDARD OF REVIEW**

The standard of review is governed by 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b). Claim construction determinations in an R&R are reviewed de novo. *See St. Clair Intell. Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, 691 F. Supp. 2d 538, 542 (D. Del. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

**III.    OBJECTIONS TO RECOMMENDED CLAIM CONSTRUCTIONS**

**A.    An "ad-hoc wireless network" is not the same as a "wireless network."**

Respectfully, the R&R is contrary to law because it reads out the words "ad-hoc" in the term "ad-hoc wireless network," departs from how a POSA would understand the term "ad-hoc wireless network" as *both* parties' expert declarations demonstrate, and does not properly account for the patentee's statements distinguishing an "ad-hoc wireless network" from a regular "wireless network" during prosecution of the '017 patent.  The R&R appears to misunderstand the parties' dispute. (R&R at 7.)  NETGEAR's position is that an "ad-hoc wireless network" has to be capable of operating "without other infrastructure, such as hubs, routers, switches."  (Joint Claim Construction Brief ("JCCB") (D.I. 129) at 13-18, 21-22.)  That is, an "ad-hoc wireless network" can still include such infrastructure, such as a connection to the Internet.  However, an "ad-hoc wireless network" must have the ability to operate without that infrastructure.  If that infrastructure

1

were removed (*e.g.*, a router hardwired to the Internet were removed), an "ad-hoc wireless network" can still operate and allow for communication directly between nodes. NETGEAR's construction of "ad-hoc wireless network" is supported by both experts' declarations and contemporary technical evidence further evincing what a POSA would understand to be an "ad-hoc wireless network." The R&R rejects this defining and innate characteristic of "an ad-hoc wireless network."

To further illustrate, TrackThings' own expert distinguished an "ad-hoc wireless network" from a "wireless network" as follows: "This is in contradistinction to an infrastructure-based wireless network where all data communications flow through a central wireless router, sometimes referred to as an access point. In other words, and as discussed more below, **an ad-hoc network can include an access point but is not limited to requiring one**." (Bims Decl. (D.I. 130, Ex. 26), ¶ 42 (emphasis added); *see also* Houh Decl. (D.I. 130, Ex. 27), ¶¶ 57-60.) A legion of technical dictionaries and industry publications from the 2000s confirm that a POSA understands an "ad-hoc wireless network" to be a network that does not require additional infrastructure and can operate without that additional infrastructure. (*See, e.g.*, D.I. 130, Ex. 14 at 86 (defining "ad hoc network" as "[a] wireless network comprising only stations without access points"; *id.*, Ex. 15 at 2 ("[a]n ad hoc, computer-to-computer network doesn't rely on a local server, router, or the Internet to mediate those connections.")

This understanding is also consistent with the specification, which merely shows the claimed "ad-hoc wireless network" as having the ability to optionally connect to the Internet through a dashed line in Fig. 2 (annotated, right). (*See*



FIG. 2

2

JCCB at 14-15.)  Further, intrinsic evidence from the prosecution of the '017 patent strongly supports NETGEAR's proposed construction.  To overcome the Kalika and Rappaport prior art references, TrackThings amended its claims to include "ad-hoc" as a claim limitation and argued:

> preamble. Furthermore, both Kalika and Rappaport remain silent with regards to the term "ad-hoc" since Kalika addresses access points (abstract) and WLAN's ([0030]) while Rappaport covers hubs, routers, switches, etc. (Col. 3, lines 34-39). Finally, the first ";"

(Ex. 5 (D.I. 130-1) at 7 (highlighting added); *see also id.* at 19.)  Regardless of whether the amendment and argument rise to a disclaimer (and they do), they inform and support NETGEAR's proposed construction.  In fact, justice would be disserved if TrackThings were now allowed to claim that an "ad-hoc wireless network" is no different than a regular "wireless network." *Spring Windows Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("A patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement.").

### B. "Computational unit" is subject to means-plus-function and is indefinite.

#### 1. The "computational unit" terms do not connote sufficient structure for performing the claimed functions as required by Federal Circuit law.

In *Williamson*, the *en banc* Federal Circuit made clear that "the presumption against means-plus-function claiming is not 'strong' and that a challenger need not show that the limitation is 'essentially … devoid of anything that can be construed as structure.'  Rather, a challenger need only show that the structure is not 'sufficient.'" *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1373 (Fed. Cir. 2020) (quoting *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (en banc)).  That is, "[t]he question is not whether a claim term recites *any* structure but whether it recites *sufficient* structure—a claim term is subject to §112(f) if it recites 'function without reciting sufficient structure *for performing that function*.'" *Id.* at 1374 (emphasis by

3

*Egenera* court) (quoting *Williamson*, 792 F.3d at 1348).

Here, the term "computational unit" is a nebulous term that fails to connote *sufficient* structure to a POSA *for performing the recited functions*. "Computational unit" can encompass hardware or software or both, and, furthermore, all sorts of hardware and software—from a simple logical computation, such as AND, OR, and NOT, to an entire server. (*Markman* Tr., D.I. 143 at 85:8-17.) Therefore, "computational unit" does *not* connote a "class of structures" like in *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1368 (Fed. Cir. 2022), which the R&R incorrectly relies on.

In *Dyfan*, there was unrebutted expert testimony that the term at issue connoted a class of structures. *Id.* at 1367-68. Not so here. The R&R clearly errs in stating that NETGEAR's expert "Dr. Houh appears to agree that the term computational unit could refer to a class of structures that includes processors and CPUs." (R&R at 15.) To the contrary, Dr. Houh's declaration made clear that "computational unit" does not specify to a POSA a specific class of structures, but instead "computational unit" can encompass a whole host of software, hardware, or both. (Dr. Houh Decl., D.I. 130, Ex. 27 ¶¶ 96-100.) The facts here are similar to the facts in the *Egenera* case, where the Federal Circuit rejected the plaintiff's argument that the term "logic" as used in the *Egenera* asserted patents was structural and meant "software, firmware, circuitry, or a combination thereof." 972 F.3d at 1371-74. The Federal Circuit held that the term "logic," even though possibly connoting some structure, was not sufficiently definite and, therefore, subject to means-plus-function construction. *Id.* The same should apply here.

The other Federal Circuit case cited in the R&R, *Samsung Electronics America, Inc. v. Prisua Engineering Corp.*, 948 F.3d 1342 (Fed. Cir. 2020), is also inapposite. The term at issue in *Samsung* was "digital processing unit," a clearly narrower term that the Federal Circuit found had a specific meaning to a POSA. *Id.* at 1354. Moreover, in that case, the very expert for the

4

party who unsuccessfully argued for mean-plus-function construction had outright admitted that "the digital processing unit recited in the claims is an image processing device that people in the art are generally familiar with." *Id.* So, in both *Dyfan* and *Samsung*, there was no expert testimony to the contrary. This lies in stark contrast to Dr. Houh's testimony clearly stating that "[t]he term 'computational unit' itself does not evoke any specific structure to a POSA." (Houh Decl., D.I. 130, Ex. 27 ¶ 96.)

That "computational unit" does not have a sufficiently definite structure to a POSA for performing the recited functions is further supported by the fact that TrackThings did not include a single dictionary definition for the term "computational unit," let alone a definition or any other evidence that ties "computational unit" to the recited functions. The only dictionary definition TrackThings provided was for a different term, "central processing unit," not recited in the claims.



FIG. 2

Moreover, the specification confirms that "computational unit" is a black box. The specification does not provide any structure (*e.g.*, any specific components) for the computational unit. The "computational unit" is literally represented as a box (annotated, right). The few places in the specification where "computational unit" is mentioned merely refer to functions that it performs, not any structure, let alone sufficient structure for performing the recited functions in the claims. ('017 patent, Abstract, 1:31-38, 3:15-55.)

The Court's decision here has major implications to the field of patent law. If patentees could use the words "computational unit" and then claim whatever functions they wanted to, that would allow patentees to functionally claim their inventions, which has long been held as improper. *See Haliburton Oil Well Cementing Co. v. Walker*, 329 U.S. 1 (1946); *Williamson*, 792 F.3d at 1349-51. Further, if patentees could merely use the words "computational unit" to avoid means-plus-function claiming, *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999) and its progeny would be rendered meaningless. *See, e.g.*, *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008); *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009); *Advanced Ground Information Systems, Inc. v. Life360, Inc.*, 830 F.3d 1341, 1349-50 ("symbol generator" was held to be a means-plus-function limitation and indefinite for failing to disclose algorithm); *Rain Computing, Inc. v. Samsung Electronics America, Inc.*, 989 F.3d 1002, 1007-08 (Fed. Cir. 2021) ("user identification module" was held to be a means-plus-function limitation and indefinite for failing to disclose algorithm). Patentees could use the nebulous and generic term "computational unit" and avoid *WMS Gaming*'s requirement that patentees disclose an algorithm to properly define the scope of an otherwise generic computer, in return for receiving a 20-year monopoly right on a patented invention.

### 2. The "computational unit" terms are indefinite because there are no algorithms disclosed for performing the claimed functions.

Because "computational unit" should be subject to means-plus-function construction under *Williamson*, the specification must disclose algorithms for performing each of the recited functions. Here, the specification fails to disclose any algorithms, let alone algorithms sufficient for performing the claimed functions. The JCCB at pages 51-52 identifies every passage that mentions "computational unit." No algorithm is disclosed clearly linking how a "computational unit" performs each of the claimed functions. *See EON Corp. IP Holdings LLC v. AT&T Mobility*

6

*LLC*, 785 F.3d 616, 623 (Fed. Cir. 2015) ("A microprocessor or general purpose computer lends sufficient structure only to basic functions of a microprocessor. All other computer-implemented functions require disclosure of an algorithm.").

"measuring a link integrity": There is no algorithm disclosed on *how* a computational unit *measures* link integrity; there is only disclosure of what "link integrity" encompasses.

"determines a placement": The specification discloses a flow chart in Fig. 4, but (1) the specification does not clearly link "computational unit" with Fig. 4 and (2) within Fig. 4, there is merely a black box that says measure strength of relay links, which, as identified in the bullet above, does not describe how to measure a link integrity.

"reconfigures the network": There is only one passage in the entire specification that mentions reconfiguring a network ('017 patent, 3:44-48), and the passage does not provide any algorithm for how to actually reconfigure the network.

"de-centralize control": There is only one sentence in the entire specification that mentions de-centralizing control (*id.*, 3:49-51), which does not provide any description, let alone an algorithm for how to de-centralize control.

"issue control signals that include adjusting . . .": There is only one passage in the entire specification that mentions issuing control signals for adjusting a connectivity, changing a frequency of operation, or changing a Wireless Standard being used (*id.*, 3:30-43), and this passage does not provide any algorithm for how to perform the function.

## IV.   CONCLUSION

For the foregoing reasons, NETGEAR respectfully requests that the Court adopt its proposed construction for "ad-hoc wireless network" and find the "computational unit" terms to be indefinite for failing to meet the requirements of § 112(6).

                          YOUNG CONAWAY STARGATT & TAYLOR, LLP

                          */s/ James L. Higgins*
                          _____
                          Melanie K. Sharp (No. 2501)
                          James L. Higgins (No. 5021)
                          Taylor E. Hallowell (No. 6815)
                          1000 North King Street
                          Wilmington, DE  19801
                          (302) 571-6600
                          msharp@ycst.com
                          jhiggins@ycst.com
                          thallowell@ycst.com

                          COOLEY LLP
                          Joseph M. Drayton
                          55 Hudson Yards
                          New York, NY  10001-2157
                          (212) 479-6000

                          Reuben Chen
                          3175 Hanover Street
                          Palo Alto, CA  94304-1130
                          (650) 843-5000

                          Naina Soni
                          1299 Pennsylvania Avenue, NW
                          Suite 700
                          Washington, DC  20004-2400
                          (202) 842-7800

Dated:  August 16, 2023          *Attorneys for NETGEAR, Inc.*

30664553.1