IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TRACKTHINGS LLC, )
)
Plaintiff, )
) C.A. No. 22-981-JLH
v. )
)
NETGEAR, INC., )
)
Defendant. )

J. Caleb Boggs Courthouse
844 North King Street
Wilmington, Delaware

Friday, August 15, 2025
10:05 a.m.
Pretrial Conference

BEFORE: THE HONORABLE JENNIFER L. HALL, U.S.D.C.J.

APPEARANCES:

McCARTER & ENGLISH, LLP
BY: ALEXANDRA M. JOYCE, ESQUIRE

-and-

KASOWITZ LLP
BY: TIMOTHY GILMAN, ESQUIRE
BY: ROBERT PICKENS, ESQUIRE

For the Plaintiff

APPEARANCES CONTINUED:

YOUNG CONAWAY STARGATT & TAYLOR, LLP
BY: JAMES L. HIGGINS, ESQUIRE
BY: GIANNA C. PENEZIC, ESQUIRE

-and-

COOLEY LLP
BY: ALEXANDRA LEEPER, ESQUIRE
BY: REUBEN CHEN, ESQUIRE
BY: EAMONN GARDNER, ESQUIRE
BY: ANGELA MADRIGAL, ESQUIRE
BY: HANBYUL CHANG, ESQUIRE

For the Defendant

10:01:38 *** PROCEEDINGS ***

10:01:38 COURTROOM DEPUTY: All rise. Court is now in
10:05:03 session. The Honorable Jennifer L. Hall presiding.
10:05:28 THE COURT: Please be seated.
10:05:33 Good morning, everyone. We're here for a
10:05:34 pretrial conference. This is *TrackThings vs. Netgear*. It's
10:05:38 Civil Action Number 22-981.
10:05:41 Let's go ahead and put our appearances on the
10:05:43 record.
10:05:44 MS. JOYCE: Good morning, Your Honor.
10:05:46 THE COURT: Good morning.
10:05:48 MS. JOYCE: Alex Joyce from McCarter & English
10:05:48 on behalf of TrackThings. I'm joined today by Timothy
10:05:52 Gilman and Robert Pickens from Kasowitz.
10:05:55 THE COURT: Good to see you.
10:05:57 MR. HIGGINS: Good morning, Your Honor.

THE COURT: Good morning.

MR. HIGGINS: Jim Higgins on behalf of Netgear from Young Conaway -- sorry.

Also from Young Conaway is Gianna Penezic. I don't know if you've met her yet, but...

THE COURT: Good to see you.

MR. HIGGINS: And at counsel table from Cooley -- I'm just going to go in order -- Allie Leeper, Rueben Chen, HanByul Chang, Angela Madrigal and Eamonn Gardner.

THE COURT: Good to see everybody.

All right. So we have a few things to get through today. I owe you some rulings on the pending summary judgment motions and I appreciate your patience with that. Let me go ahead and read those into the record.

So I previously ruled on the parties' summary judgment motions with respect to the '017 and '893 patents, and I took under advisement portions of the summary judgment motions regarding the '442 patent.

And that's my Order at DI 343.

I already granted summary judgment in favor of Netgear of no direct infringement of the system claims of the '442 patent. The remainder of Netgear's motion for summary judgment of noninfringement of the '442 patent, and that's at DI-240, will be denied.

Netgear makes two arguments regarding noninfringement of the asserted claims of the '442 patent. First, that the accused products do not contain software radios; and, second, that the accused products do not receive an input stream of bits from the Internet. Those arguments are at DI-243 at Pages 13 to 16.

As to the first argument, the record reflects a genuine dispute of material fact as to whether the accused products contain software radios.

And for the record, for example, we have DI-272, Exhibit H, a Netgear document; DI-248, Exhibit 14, Paragraph 76 to 81 from TrackThings' expert opining that the accused products contain software radios. And also Exhibit 4, at Paragraphs 267 to 77, Netgear's expert opining that the accused products do not contain software radios.

As for the second argument, the record reflects that there is a genuine dispute of material fact as to whether the accused products receive an input stream of bits from the Internet. For example, at DI-248, Exhibit 14, Paragraphs 88 to 89, Plaintiff's expert opining that the accused products receive an input stream of bits from the Internet. And Exhibit 4, Paragraphs 284 to 87, Netgear's expert that the -- explaining that the accused products do not receive an input stream of bits from the Internet.

So Netgear's motion for summary judgment of

noninfringement regarding the '442 patent is denied.

We also have Netgear's motion for summary judgment that the '442 patent is invalid. That's at DI-241. That will also be denied.

Netgear first seeks summary judgment that the claims of the '442 patent are unpatentable under Section 101 at Title 35. The Court concludes that the claims of the '442 patent are not directed to an abstract idea under Step 1 of the Alice two-step test. The Federal Circuit has held that patents reciting specific improvements to computer networks that generate improved connectivity, speeds, or security are patent eligible; for example, *Packet Intelligence vs. NetScout Systems.* That's at 965 F.3d 1299, Pages 1309 to 1310, from 2020.

We also have *Menton Solutions vs. Digi International*. It's 2021 Westlaw 5291802, at Pages 3 to 6, the Federal Circuit from 2021. *SRI vs. Cisco*, at 930 F.3d 1295, at Pages 1303 to 04. That's from 2019.

The Court agrees with TrackThings that the '442 patent is directed to a computer network with relays containing multiple radios configured to create specific data pathways resulting in an improved computer network with increased bandwidth. The claims are, therefore, patent eligible because they are directed to a solution to a technological problem specific to computer networks.

The claims do not merely recite functional results, but instead recite specific means for improving computer networks, for example, by utilizing relays and software radios to partition and transmit streams of bits from the Internet.

Netgear's next summary judgment that the asserted claims of the '442 patent are invalid for lack of written description under Section 112 of Title 35, that argument is at DI-306 at Page 11. Specifically Netgear contends that the '442 patent written description specification fails to sufficiently describe the limitation partitioning a plurality of streams of bits into a plurality of portions. Having reviewed the specification, the Court cannot conclude that there is no dispute of material fact that the disclosure is insufficient.

The specification repeatedly describes the process of partitioning a stream of bits into a plurality of portions, for example, at Column 3, Lines 10 to 14 and Lines 46 to 43; Column 6, Lines 9 to 13 and 35 to 37 and 43 to 60; and Column 7, Lines 1 to 10.

Also, both sides' experts reach opposite conclusions as to whether this limitation satisfies the written description requirement. At Document ID 248, Exhibit 16, Paragraphs 562 to 63, Netgear's expert opining that the specification does not show that the inventor was

in possession of the claimed invention and at Exhibit 20, Paragraphs 296 to 302, TrackThings' expert opining that the specification adequately discloses that the patentee was in possession of the claimed invention.

Accordingly, there's a dispute of material fact as to whether the written description requirement is satisfied and the summary judgment motion will be denied.

I also have pending *Daubert* motions under advisement. I have Netgear's motion to exclude testimony of TrackThings' damages expert, Stephen A. Holzen. That's at DI-242. And Netgear's second motion to exclude testimony of TrackThings' damages expert, Stephen Holzen, at DI-373.

Those motions will be denied. The admissibility of expert testimony is governed by Rule 702, which requires the proponent of the testimony to demonstrate to the Court that it is more likely than not that the expert's specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods and the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Netgear's primary argument is that the opinion in Mr. Holzen's supplemental report should be excluded because he applied a methodology that improperly calculated

the value of the '442 patent relative to the '017 and '893 patents, and that the latter two patents are no longer in the case because the Court granted summary judgment of noninfringement as to those patents.

Having reviewed all of the reports from Mr. Holzen, the Court concludes that that's a mischaracterization of his analysis. The Court agrees with Plaintiff that he independently calculated a reasonable royalty for the '442 patent and did not impermissibly rely on the '017 and '893 patents. The fact that he used slightly different language to describe his analysis across his reports is not a basis for exclusion under *Daubert*.

Netgear also asserts a number of alternative arguments that the Court also rejects. I'll summarize my reasons briefly:

The Court disagrees that Mr. Holzen offers unsupported technical opinions as the supplemental report repeatedly cites back to the first report, which itself cites TrackThings' technical expert, Dr. Bims, for its technical assertions.

The supplemental report references transceivers and that's not improper as to -- as, first, asserted Claim 17 recites transceivers; and, second, Mr. Holzen supports that proposition by citing back to the original report which itself cites an interview with TrackThings'

technical expert, Dr. Bims. I point to Document 375, Exhibit D, Paragraph 17, and DI-248, Exhibit 21, Paragraph 182.

Netgear's challenge to Mr. Holzen's selected benchmark products is a matter of cross-examination. Federal Circuit has explained that challenges to an expert's selected benchmarks, including technical differences between the benchmarks and the accused products, go to evidentiary weight not admissibility. That's *Apple vs. Motorola*, 757 F.3d 1286, at Page 1319, from 2014, which was overruled on other grounds by a subsequent case.

The Court rejects Netgear's argument that Mr. Holzen applied a methodology that erroneously determined the smallest salable practicing unit. I'd also note that the Federal Circuit has explained that the smallest salable practicing unit is not the end-all be-all of damages calculations. What matters is whether the expert properly apportions out nonpatented features. And here Mr. Holzen states that he has done that.

And I point the parties to the case of *Virnetx vs. Cisco*. It's 767 F.3d 1308, at 1327, from 2014, where the Federal Circuit states the requirement that a patentee identify damages associated with the smallest salable patent practicing unit is simply a step towards meeting the requirement of apportionment.

10:16:51 Finally, the Court rejects Netgear's argument
10:16:55 that Mr. Holzen has disguised an improper, unjust enrichment
10:16:59 argument as a reasonable royalty. The Federal Circuit has
10:17:04 upheld using the income approach to estimate a reasonable
10:17:07 royalty, and it has explained that under *Daubert* the
10:17:09 essential requirement is that the ultimate reasonable
10:17:13 royalty award must be based on the incremental value that
10:17:15 the patented invention adds to the end product. That's
10:17:18 *Ericsson v. D-Link*, at 773 F.3d 1201, at Page 1226, from
10:17:25 2014.

10:17:27 Mr. Holzen's report is in accordance with that
10:17:30 law. So, in sum, the Court has assessed and rejected
10:17:33 Defendant's arguments to exclude the opinions and the Court
10:17:36 finds that it is more likely than not that the proffered
10:17:40 testimony satisfies the requirements of Federal Rule of
10:17:43 Evidence 702. Defendant's remaining criticisms can be
10:17:46 addressed through cross-examination and in the presentation
10:17:49 of contrary evidence.

10:17:51 And I think that takes care of the outstanding
10:17:55 motions. Of course, we've got the motions in limine that
10:17:59 were filed with the Pretrial Order.

10:18:00 So let's turn to the Pretrial Order.

10:18:03 As an initial matter, I wanted to thank counsel
10:18:08 for just an outstanding Pretrial Order. This -- I can't
10:18:14 tell you how much time this saves us. We've got another

case going to trial next week and the Pretrial Order was not in this situation at all, and it's taken up countless hours of our time.

Having reviewed this, we're so, so appreciative. So thank you for that and thank you for working out so many disputes that will save time today and when we get the case to trial. I really -- I mean that from the bottom of my heart from all of us on this side.

So let's talk about the motions in limine. So we have TrackThings' Motion in Limine Number 1 that has to do with the parties' -- it generally talks about the parties not introducing evidence about other proceedings. But it really specifically has to do with the Plaintiff wanting to exclude evidence and argument regarding a case that the Plaintiff had against Amazon where the jury found noninfringement.

I guess what I'm wondering here is: It seems relevant that there's this other product out there that doesn't infringe. Is there a way we could get that point in front of the jury without making a big deal out of it because it is the loss of a jury trial? I guess I'm trying to understand how we should move forward.

MR. PICKENS: I'm happy to address it, Your Honor, or Netgear can, if they want.

MS. LEEPER: So Your Honor is exactly correct

that, especially in light of Your Honor's *Daubert* ruling, the existence of this Amazon mesh Wi-Fi product that a jury has found noninfringing is relevant to the selection of the benchmark product and is something that we need to be able to cross Mr. Holzen on. As far as the Amazon verdict goes, that's the limited issue that we want to use it for is the fact that a jury has found this product to be noninfringing or, more specifically, that there has been a judgment that this product is noninfringing.

If TrackThings and the witnesses don't fight that characterization, I don't anticipate a need to get any further into the details. Right now it's hard to say. In deposition, Mr. Holzen was very reluctant to agree that there had been a finding that it was a noninfringing product. So it's hard to agree up front to whether there's a way to cabin that further.

THE COURT: But you're okay -- you'd be okay with if there's a way we could say -- limit it to saying that there has been a Court judgment of noninfringement? You're not -- you know, I think, you know, their argument here is under Rule 403 which is that the -- you know, the risk of unfair prejudice substantially outweighs the probative value. If the prejudice is that they're hearing another jury has looked at these patents, we can get rid of that prejudice by just not talking about a jury finding;

10:21:11 right?

10:21:13 MS. LEEPER: That should be fine, Your Honor. I
10:21:14 do want to mention one other thing with regard to this MIL,
10:21:18 which is that as Your Honor zeroed in on, the MIL is really
10:21:21 directed towards the verdict from the Amazon finding.
10:21:24 There's three of TrackThings' witnesses who testified about
10:21:26 the '442 patent in that Amazon trial, and we just want to
10:21:30 clarify that it's our understanding that TrackThings is not
10:21:33 seeking to exclude us from using impeachment testimony that
10:21:37 came out of that trial.

10:21:38 THE COURT: Then just to -- I'm sure they're
10:21:41 going to have questions about how that would go, but you
10:21:43 could say something like, You've testified about the '442
10:21:45 patent in another case and didn't you say this? Now, are
10:21:48 you going to try to take the next step and say, you know,
10:21:51 The jury in that case found that you weren't credible, or
10:21:54 you didn't meet your burden of proof or anything like that?

10:21:56 MS. LEEPER: No. No, Your Honor.

10:21:57 THE COURT: Okay. So it would just be, Here's
10:21:58 your prior testimony under oath, and you're not going to
10:22:00 talk about the outcome?

10:22:01 MS. LEEPER: That's correct.

10:22:02 THE COURT: All right. Thank you very much.

10:22:03 All right. We've got some offers on the table
10:22:05 here from Defendant.

10:22:06 Let's hear from Plaintiff.

10:22:09 MR. PICKENS: Thank you, Your Honor. Robert Pickens for Plaintiff TrackThings.

10:22:15 I guess as an initial matter I'll say certainly 10:22:19 I think we're moving in the right direction. We're 10:22:21 certainly in agreement that making a reference to another 10:22:26 jury's finding of noninfringement as to another product 10:22:29 would be highly prejudicial, which I think is directly in 10:22:32 line with a lot of Delaware case law. I think the question 10:22:34 is: Where does the line get drawn?

10:22:36 I'd say this is a little complicated by the way 10:22:39 in which Defendants chose to craft this argument. They put 10:22:44 in some supplemental expert reports. And I think there was 10:22:46 an opportunity to say, Hey, jury, there is this Eero mesh 10:22:52 Wi-Fi product, and we have a technical opinion that it 10:22:54 doesn't infringe. They chose not to do that. They chose to 10:22:57 point to the Amazon verdict itself. So, you know, I think I 10:23:01 see where we're probably -- that argument is probably not 10:23:03 going to prevail here. But I will say at the outset, I 10:23:07 think there was a way to do this right and it wasn't done 10:23:09 right.

10:23:09 They said we want to look at the Amazon case, 10:23:12 and I think that it -- that was potentially done 10:23:14 specifically because they wanted to make reference to that 10:23:16 in a prior finding.

But that aside -- and just the only other point just I'll make is that, you know, this isn't -- they want to point to a mesh product and say there's a noninfringing mesh product that doesn't infringe and that's the right comparable product. And to be clear, that's not Mr. Holzen's analysis. Mr. Holzen looked at nonmesh products and compared it to mesh and said, Okay, that's the comparator. We're going to look at the prior art. We're going to look at things that didn't behave in a mesh fashion. And then we're going to jump up to mesh and use that as a comparison. So it is a different comparison they're making.

All of that said, if that's not availing, I think the question is really just how much can we limit this noninfringement finding. And I think right now the expert reports say *Amazon vs. Eero,* jury trial verdict. You know, I think if we are going to say, Okay, it is coming in, then it's going to be a very low level where there's judgment that a mesh product that exists in the market doesn't infringe. I think that's pretty much as far as we can go.

You know, obviously, there will have to be objections live at trial, but I think from our perspective we still think it really shouldn't come in at all because there was a right way to do it. But if it is, it should really stop at there exists a noninfringing mesh product and

that's it.

THE COURT: So I think what I would limit them to and what they seem to be amenable to is there can be a question about there being a Court -- a judgment from another Court that this product is noninfringing.

MR. PICKENS: Sure. Yeah, I think --

THE COURT: And it doesn't suggest that -- I mean, I don't know if the jury is going to -- because this is -- for almost everyone sitting on the jury, this is the first patent infringement case they've seen, and so I don't think the jury is necessarily going to think to themselves that you brought that case and that there was another jury and that you lost. It's just going to be a judgment from another Court that there was -- that that product doesn't infringe.

MR. PICKENS: Sure. And I understand and appreciate that, and I think that's -- you know, if you're inclined that some evidence of it has to get in, I think that's probably the best we can do.

THE COURT: Okay.

MR. PICKENS: You know, Mr. Holzen may need a little bit of leeway to explain why that's not relevant to his analysis. I think some of that is in the report, but, you know, his position thus far has been it shouldn't come in at all, and it's not relevant and it's subject to

post-trial motions and all of that. But if that's the way it's going to come in, I think he has a very reasonable explanation that's consistent with his reports. I -- I don't think we're looking outside of the report, but just want to flag it.

THE COURT: Understood.

MR. PICKENS: He may have to explain, That wasn't the analysis I did, and some of that was explored in the deposition. So some of that's recorded in the deposition and in his report.

THE COURT: Okay. I appreciate that.

So just with respect to this part, before we talk the prior testimony, so the objection on the table is under Federal Rule of Evidence 403. I find that the information that this product is not infringing is relevant. It does have some probative value. The probative value is not substantially outweighed by the risk of unfair prejudice if the questions are restricted to there was a judgment of another Court of noninfringement of this product.

And so my ruling is based under 403. Nobody's made any arguments to me about collateral estoppel or anything else like that. This is purely an evidentiary ruling.

All right. Let's talk about the testimony from the witnesses in the prior case. That testimony, they've

wanted to confirm with the Court that that can be used as an impeachment, and they're not going to talk about the testimony being accepted or rejected by the jury.

You agree that that's all appropriate under the law?

MR. PICKENS: I think the colloquy earlier was in line with the law. It's prior under oath testimony. It can certainly be used for impeachment. We certainly feel that making gratuitous references or really any references in that regard to the fact that it was an Amazon litigation, even connecting the two dots we just talked about, I'm not sure why that would need to be done. I think --

THE COURT: Right. Just prior testimony in another case about these patents.

MR. PICKENS: Exactly.

THE COURT: Okay. Are we all good with that?

MS. LEEPER: Yes, Your Honor.

THE COURT: All right. I think that resolves Motion in Limine Number 1. It was resolved.

We've got Motion in Limine Number 2. It has to do with TrackThings wanting to confirm that Mr. Holzen can present his theory without getting into the fact that we granted summary judgment of noninfringement of the other two patents that were originally in the case. And so my thoughts on this are that I agree with Defendant that they

10:27:48 should be able to cross-examine Mr. Holzen about his
10:27:52 opinions with prior -- with opinions from earlier in the
10:27:55 case, opinions in the supplemental report. The earlier
10:28:00 opinions are a prior statement from the witness regarding
10:28:01 patents at issue in this case.

10:28:03 But I'm wondering if we can resolve this by
10:28:08 agreement by saying that the patents are no longer the issue
10:28:13 in the case without saying that the Court granted summary
10:28:17 judgment against the Plaintiff.

10:28:20 Can I hear from Defendant on that?

10:28:23 MS. LEEPER: Yes, Your Honor. We don't need to
10:28:24 use the word "summary judgment." And, frankly, I don't want
10:28:27 to have to explain the concept of summary judgment to the
10:28:30 jury.

10:28:30 THE COURT: Right.

10:28:30 MS. LEEPER: But it is important, both for the
10:28:32 cross-examination of Mr. Holzen and for our expert,
10:28:35 Mr. Kidder's rebuttal to Mr. Holzen, to be able to explain
10:28:39 that the '017 and the '893 -- it's not only that they're no
10:28:43 longer in the case, but that they are not practiced by the
10:28:47 Netgear product, that they don't infringe.

10:28:51 THE COURT: Okay.

10:28:53 MS. LEEPER: And I can explain why that's
10:28:54 important if Your Honor --

10:28:55 THE COURT: Yeah, I understand why.

10:28:56 Let me hear from Plaintiff.

10:28:58 MR. GILMAN: Thank you, Your Honor. Timothy Gilman from Kasowitz on behalf of TrackThings.

10:29:08 So my initial thought, hearing your ruling on the *Daubert* motion, is that this is -- could no longer be an issue in the sense that Mr. Holzen's opinion for trial is based on -- I think this gets to the one benchmark comparison step where there are three technologies that are being drawn out by the benchmark comparison.

10:29:29 In his second supplemental report, he talks about them just in terms of the technological labels and that only one of them is covered by the patent that's at issue. That's consistent with how it was addressed throughout his prior two reports, too. And I think there are ways to still use those reports to cross-examine him without reference to the patents, because you can just talk about it in terms of the technology and not reference the patents.

10:29:50 You know, as cited in our motion, you know, Courts routinely exclude the presentation of patents that are no longer in a case because of the -- the risk of -- the obvious risk of prejudice here. I think that given that you can talk about the issues technologically rather than with reference to the patents that there is no need to open that door. I think that if they need to be addressed and if Your

Honor finds that they need to be mentioned, and in the context of the initial report, I think a phrasing that those two patents are not at issue in this trial is probably the least prejudicial way to present it. Not that they're no longer at issue, not that they don't infringe, just that those two patents are not at issue in this trial.

THE COURT: Right. So they want to take it one step further, and I tend to agree with them that, not only are they not at issue, but similar to the MIL that we just heard about, that not only are they not at issue, but also they are not infringing and not -- they're not practicing those patents.

So will your expert deny if he's asked that the accused products don't practice these other patents or there has been a Court determination, something like that?

MR. GILMAN: Right. It's a little -- right. It's a little tricky because there are post-trial motions that are still going on and those findings are still subject to appeal.

THE COURT: Right.

MR. GILMAN: So I think we wouldn't want to have them say something definitive that was at odds with what was going on in those proceedings.

THE COURT: Right.

MR. GILMAN: I think saying that there's been a

10:31:23 judgment -- again, understanding your ruling on MIL
10:31:26 Number 1, I think repeating this over and over risks
10:31:30 actually creating more and more prejudice, that there have
10:31:32 been detrimental findings against TrackThings in other -- in
10:31:34 other forums that the jury is going to start to pick up on.
10:31:39 That's why I -- I -- you know, TrackThings, we continue to
10:31:41 believe it's not necessary to talk about the patents, but
10:31:42 there is a more neutral way that we would say that you can
10:31:46 say it; that they're not at issue, that they're not -- the
10:31:47 technology associated with them is not part of damages here,
10:31:51 that the damages are restricted to the technology for the
10:31:54 '442.
10:31:54 I think there are ways --
10:31:55 THE COURT: Right.
10:31:56 MR. GILMAN: -- of referring to them.
10:31:57 THE COURT: But I think also we need to have the
10:31:59 point that they've made that these patents are not
10:32:01 practiced.
10:32:02 And so, you know, here's what we're going to do
10:32:05 about this one, I'm going to allow them to say that there
10:32:08 has been a judgment that these patents are not practiced.
10:32:12 If you want to work out -- if you've got proposals to
10:32:16 minimize what you think might happen in terms of prejudice,
10:32:20 why don't you see if you can work that out with them.
10:32:23 I'm also amenable to having some kind of a

curative instruction that we can give to the jury. And so why don't you propose -- come up with something that you think will minimize the prejudice and propose that to them as well.

I agree that there's an obvious risk of prejudice to talk about other patents that are not in the case anymore. I don't think that the risk of prejudice substantially outweighs the probative value given the way that Mr. Holzen framed his original opinion, and I think the other side needs to be able to cross-examine him on that.

Whether or not the jury is going to understand any of it, I don't know. But that's not my problem, my problem is to do the 403 balancing. And so that information can come in, but I am amenable to whatever way we can get that information in without prejudice to your side.

MR. GILMAN: Okay. Thank you, Your Honor.

THE COURT: Thank you.

All right. And now, finally, we have from Plaintiff their MIL Number 3, which has to do with Netgear's patents.

So the parties have already agreed that the jury is going to be instructed that the fact that the Defendant has a patent is not a defense to infringement. I can also repeat that instruction during trial. Defendant agrees that it's not going to use its patents to argue noninfringement.

10:33:50 I guess Plaintiff wants to make sure that Defendant's patents don't come up at all and I'll hear argument about that.

10:33:57 MR. PICKENS: Roberts Pickens for Plaintiff TrackThings, Your Honor.

10:34:08 I don't think the issue is Plaintiff's patents or Defendant's patents coming up at all. I think that they're free to tell their invention story, free to tell their innovation story, and I think all of that's consistent with the precedence on this issue.

10:34:27 I think the -- really where you start crossing the line into significantly confusing for the jury is when you start bringing up actual patent numbers and introducing those patents as exhibits and saying, This is a Netgear patent and the title is mesh Wi-Fi networking or otherwise, that then it starts to swirl around and say, Okay. They've got patents. We've got patents. It becomes very unclear.

10:34:53 So I don't know -- we're not trying to stop them from talking about their invention story and I think -- I mean, in preparing for this, we were looking back through a transcript, I think, from the *Ferring* litigation, which I think was a pretrial conference last July, where Your Honor came out, I think, largely where we would like to come out, which is, you know, just limiting the scope of the patents, shouldn't be coming in as exhibits. Ideally, I think it

shouldn't be coming in talked about as specific patent numbers or specific titles you can put up on a screen and saying, This is our Patent Number XYZ, and it's relevant to our invention story because I -- I think it's very confusing for a jury to see that come up and say, Okay. They've got patents, too. And there's always that implication of, Well, they've both got patents, so nobody is right.

And that's -- I think that's our biggest concern is that it just doesn't muddy the waters and be brought up in a manner that's necessarily confusing and prejudicial.

THE COURT: Thank you.

MR. CHEN: Good morning, Your Honor. Reuben Chen --

THE COURT: Good morning.

MR. CHEN: -- representing Netgear. We're representing Netgear. It's good to see you again.

THE COURT: Good to see you, too.

MR. CHEN: So Netgear's patents are relevant to Netgear's own story of innovation, to the issue of damages, and also against willful infringement, which is at issue in this case.

It would be highly prejudicial to Netgear if TrackThings is allowed to tell its alleged invention story without Netgear being able to tell its own story of innovation.

TrackThings' briefing is incorrect on both the law, as well as the facts.

On the law, TrackThings states that Netgear failed to cite a single Delaware case, finding it permissible for Defendant to reference a patent at trial. This is not true. Defendant Netgear cited to, and also attached as an Exhibit 1, the *Abbott vs. Dexcom* case where the Court there found that a Defendant could reference its patents during trial. I'm sure Your Honor is also aware of her decision in the *Sight Sciences* case allowing the Defendants --

THE COURT: That might be asking too much. I don't remember what happened yesterday usually.

MR. CHEN: Understood. I know you've got a busy docket, Your Honor.

So in that case Your Honor found that the Defendants could actually reference the patents because the issue of willfulness was involved in that case. And Your Honor is certainly not alone, there are numerous Delaware decisions finding that a Defendant can reference its own patents. These include the *Deere vs. AGCO* case before Judge Connolly, the *Siemens vs. Westinghouse* case before Judge Stark, the *AVM vs. Intel* case before Judge Andrews, and a whole number of additional cases I'm happy to cite to Your Honor if -- if you would like.

10:37:41 THE COURT: So I'm hearing from the other side it's okay for you to talk about the patents as part of your invention story. I understand your arguments about willful infringement.

10:37:52 MR. CHEN: Yeah.

10:37:52 THE COURT: I mean, I think what they're worried about is this is going to get extensive. So are we -- are you looking to introduce them into evidence?

10:38:00 How -- is it with the inventors of your technology? How is this going to go?

10:38:05 MR. CHEN: Yeah. With fact witnesses and possibly also Dr. Houh --

10:38:08 THE COURT: Okay.

10:38:09 MR. CHEN: -- Your Honor.

10:38:09 So we do plan to introduce Netgear's patents. I don't think it's going to be extensive, but we need to be able to tell our innovation story and the fact that our products are covered by our own patents.

10:38:20 So on the facts, TrackThings' briefing is also incorrect. They complain about objections that were made during Mr. Joseph Emmanuel's deposition. But, one, Mr. Emmanuel answered all of the questions, even though they were directed legal conclusions. TrackThings in its briefing only included a small subset of the questions that were asked of Mr. Emmanuel. In our briefing we attached

additional questions that Mr. Emmanuel was able to answer.

Two, and importantly, TrackThings did not serve a Rule 30(b)(6) deposition topic asking for a technical witness on Netgear patents and so Netgear had no obligation to identify a witness that could speak to the technical aspects of its patents.

And number three, TrackThings did not ask other Netgear technical witnesses any questions about Netgear's patents. That was on them, not on us. We should be able to present our story of innovation.

And, again, it's also relevant for damages and it's definitely relevant with respect to willful infringement when the fact pattern here is that Netgear had no notice prior to this Complaint being filed of TrackThings' patents. And, of course, Netgear has a number of patents on its own accused products, so it's definitely relevant to the issue of willfulness, Your Honor.

We're not planning to use it for noninfringement. And as Your Honor has said, we've already agreed that there's a curative instruction and Your Honor can also mention that during the trial.

THE COURT: Okay. Can I ask you about damages?

MR. CHEN: Yeah.

THE COURT: They've pointed out that your experts don't cite to the patents as the materials they've

considered.

MR. CHEN: In our supplemental Dr. Henry Houh report, we do --

THE COURT: Okay.

MR. CHEN: -- cite to Netgear's patents. And that's in a footnote.

Two final points worth noting, Your Honor. In the *TrackThings vs. Amazon and Eero* case, the Defendants there were allowed to reference it and its patents. And at least as to one of Netgear's patents, U.S. Patent Number 10,292,159, TrackThings has now twice included that patent on its exhibit list. TrackThings included that patent on its original exhibit list. And then after MILs were already filed, TrackThings included that patent again on its amended exhibit list. So with at least that patent, TrackThings should not be allowed to complain.

If Your Honor has any further questions, I'd be happy to address them.

THE COURT: No. Thank you.

MR. CHEN: Thank you.

THE COURT: So with respect to the Motion in Limine Number 3, the motion is going to be denied. I find that the existence of patents on Netgear's products is relevant. It has minimal relevance, but it does -- if we're going to be talking about invention stories, they're going

to be allowed to introduce those.

I'm open to reading a jury instruction during the trial which Defendant has agreed is appropriate. So prepare that jury instruction and I will read it at the appropriate time. So just say, Your Honor, Plaintiff would like the curative instruction to be read and then we'll have that and I'll read it.

Defendant's -- given Defendant's agreement that they're not going to use the patents to argue noninfringement, I think that resolves Motion in Limine Number 3.

All right. Netgear's got Motion in Limine Number 1. Let's hear argument on that.

MS. CHANG: Good morning, Your Honor. HanByul Chang on behalf of Netgear.

We request the Court grant Netgear's Motion in Limine Number 1, excluding evidence, testimony or argument regarding secondary considerations of nonobviousness.

As the Court is aware, evidence of nonobviousness, to be relevant, there must be a showing of a nexus. So without a showing of nexus, there is no relevance to the evidence of secondary considerations and that irrelevant evidence should not be presented to the jury.

So this is ultimately a question of evidence and what is admissible during trial. TrackThings here has

failed to show any nexus or connection between purported evidence of secondary considerations and the claimed invention. And, therefore, there is no relevant and admissible evidence that can be -- that can come in and present to the jury.

Dr. Bims, in his rebuttal report, has two paragraphs on his opinion on secondary considerations, but they are merely reproduction of TrackThings' response to our Interrogatory Number 8. And beyond that, there's no additional support to support his opinions nor does he attempt to make any kind of connection between the claimed invention and secondary considerations.

And to -- in order to claim that there is a nexus, he just includes a conclusory statement that there is a nexus. There is no other factual support to support his opinion.

On the other side of the scale, prejudice on Netgear and the risk of confusing the jury and misleading the jury is great. Without an expert being able to adequately explain what the nexus is between the secondary considerations and the claimed invention, the jury will be drawn to make a conclusion based on improper basis by placing undue weight on this evidence.

And this district has excluded this kind of irrelevant evidence when there was no showing of nexus in

this situation precisely because the probative value is substantially outweighed by the risk of prejudice. Particularly in *EMC*, the Court excluded evidence of secondary considerations when there was no showing of nexus because, even with a limiting instruction, the probative value was substantially outweighed.

TrackThings, on the other hand, has not pointed to a single case where the Court squarely addressed this issue in a motion in limine and admitted this kind of evidence when there was no showing of nexus that Plaintiff could point to in the record. So we respectfully request the Court grant our motion.

THE COURT: Thank you.

MR. PICKENS: Your Honor, Robert Pickens for Plaintiff TrackThings. The fundamental problem with Netgear's Motion in Limine Number 1 is that it proceeds from a faulty premise, which is that there's no relevant and admissible evidence or testimony regarding secondary considerations. It's in Exhibit A to our opposition. It's the rebuttal report of Dr. Bims where he provides exactly that. And that's a rebuttal report that wasn't challenged during *Daubert* or summary judgment, and I'm sure you appreciate from the briefing -- and I won't belabor the point as to this is not the right time for this -- but it isn't the right time for this because we're -- the motion in

limine stage briefing, this in three and one-page submissions and this is -- the question of sufficiency of evidence is something that should have been addressed earlier.

Regardless, it's also not correct that Dr. Bims failed to draw any connection or that his statements are merely conclusory. He explains that the '442 patent's invention satisfied long-felt need in Paragraph 245 of Exhibit A, and he explains what the nexus is in Paragraph 246, including that the novel elements of the '442 patent overcame challenges in the prior art by using multiple differentiated radios and relay. And that's a paraphrase to be clear.

He has two paragraphs on it. They were properly disclosed during fact discovery during their expert report and they were unchallenged. And at this juncture, that's evidence that it's a determination of fact as to whether or not the nexus is found and there's competent evidence that should be put to the jury.

Very briefly, regarding Plaintiff's or Defendant's case law, for example, *EMC vs. Pure*, I didn't read either of their cases as adjudging the sufficiency in both of those cases. In *EMC vs. Pure*, the Plaintiff proffered two grounds for secondary considerations. One was pre-suit notice, and the Court -- my understanding, the

Court's judgement was pre-suit notice, just wasn't relevant to secondary considerations as a threshold matter. And the same was found for an IPO and acquisition values. These weren't proper secondary considerations opinions. These were -- candidly appear to be a Plaintiff trying to sneak in other evidence under the guise of secondary considerations, which is a proper topic for a motion in limine, unlike here where we have long-felt need, long established by the Federal Circuit appropriate secondary consideration, an expert opinion of record that's unchallenged. So we would submit that this should be put to the jury.

THE COURT: All right. Thank you very much.

I agree with counsel for Plaintiff that this is not the right time for this argument for the reasons that counsel explained today and in the briefing. So the Motion in Limine Number 1 is going to be denied.

Plaintiff fails to present sufficient evidence for the issue to go to the jury. Netgear can move for a JMOL at the appropriate time.

All right. Let's talk about Netgear Motion in Limine Number 2.

MR. CHEN: Thank you, Your Honor. To be clear, Netgear's motion is not trying to exclude Mr. Gabara from telling his story of being an inventor and serial patent filer, but pointing to the purported licensing of unasserted

Gabara patents for millions of dollars is irrelevant to the asserted patents, likely to confuse the jury and highly prejudicial to Netgear. And this isn't a theoretical risk.

We heard TrackThings' counsel argue at summary judgment that Mr. Gabara -- Mr. Gabara's patents had been licensed across the industry when, in fact, none of TrackThings' patents have ever been licensed. And what counsel was referring to are undisclosed, undisclosed license agreements involving other companies where Mr. Gabara had worked in the past.

Worse, we know that TrackThings will try to rely on Exhibit A to their opposition.

And if I could use the ELMO, Your Honor.

Exhibit A appears to be a self-evaluation from Mr. Gabara during his time at a company called Agara.

Exhibit A has nothing to do with any patent that TrackThings has owned. It's irrelevant, likely to confuse the jury and highly prejudicial.

The underlying license agreements were never produced during discovery and still have not been produced. So referencing them would also violate the best evidence rule.

Exhibit A does not even identify any of the patents by full patent numbers. There is no expert on either side who has testified to any of the patents being

10:50:56 irrelevant to this case, let alone any reasonable royalty.
10:51:01 So it would be highly prejudicial to allow TrackThings to
10:51:05 argue that Mr. Gabara's inventions have been licensed for
10:51:08 millions of dollars when, in fact, none of the asserted
10:51:11 patents and none of TrackThings' patents, whether asserted
10:51:15 or not asserted, have ever been licensed.

10:51:18 If Your Honor has any further questions, I'd be
10:51:21 happy to address them.

10:51:22 THE COURT: No. Thank you.

10:51:23 MR. CHEN: Thank you.

10:51:24 MR. PICKENS: Your Honor, Robert Pickens for
10:51:30 Plaintiff TrackThings.

10:51:31 With regard to this motion in limine, I think we
10:51:37 heard just right there in the argument the very reason why
10:51:41 Mr. Gabara should be allowed to talk about his history of
10:51:45 invention and that his inventions have value. Opposing
10:51:49 counsel referred to Mr. Gabara as a serial patent filer.
10:51:52 That's a euphemism for implying that Mr. Gabara is
10:51:55 improperly filing patents. He's not. Mr. Gabara started
10:51:59 his career in the United States military quite a while ago.
10:52:03 He worked for Bell Labs. He's had a successful career as an
10:52:06 inventor. He should be allowed to talk about that. That
10:52:09 goes hand in hand with Netgear wanting to talk about their
10:52:13 own invention story.

10:52:14 Mr. Gabara has been an inventor, has worked for

major corporations designing significant technology in the wireless networking space. There's going to be a trial theme that he's a serial patent filer. There's going to be a trial theme that he's an elderly gentleman that doesn't necessarily have the faculties to be designing modern technology. And that's belied by his long history of technology innovation and the fact that real companies have paid real money.

Now, they point to this performance review, and counsel implied that it wasn't clear what patent it is. To be clear, it's referenced right there, the Gabara '229 patent. We are all patent attorneys. We can all find the Gabara '229 patent. Mr. Gabara can authenticate this performance review. He has competent first-hand knowledge of his long career of the fact that companies have taken licenses to his patents. And what's more, there's other evidence that we believe is going to come in.

We pointed out that their experts have referenced a $200,000 patent sale, and in their reply I didn't see any commitment not to raise that. So if they would like to bring up the concept that Mr. Gabara has sold patents for only $200,000, I think it's -- that opens the door indisputably to bringing up that Mr. Gabara's patents have been licensed in the past as part of transactions that are much larger.

10:53:33 And also for the record, that $200,000 patent sale was around the time Mr. Gabara had to get a liver transplant, which, of course, we'll bring up in the record if they bring it up. But if this is a -- if this is a trial theme that's going to come in, and it seems like it is, he should be able to talk about his background, where he worked, what he's done, the fact that he also has other patents, and that those patents also have value, at a bare minimum, to counter the story that they would like to introduce about their own innovation as well as the story that seems like its going to come in regarding Mr. Gabara's faculties mand credentials and inventor, all of which is contrary to the record.

THE COURT: All right. Thank you very much.

All right. I appreciate the arguments from both sides.

I think this one is close. So we're going to allow Mr. Gabara to talk about the fact that he has patents. I don't even think Defendant was challenging that. He can say that his patents have been licensed. He cannot say that his patents have been licensed for tens of millions of dollars.

I didn't hear a proffer as to what the probative value was of that with respect to an issue in the case. And the only thing I can think of is the probative value is to

suggest that he's got good patents and, therefore, the patents are valid. And that's not appropriate.

So does everybody understand where we are with that one?

MR. CHEN: I do, Your Honor. I think that makes a lot of sense. And just to be clear, then Exhibit A shouldn't come in because it actually has, like, figures on there, $25 million for this contract that includes a Gabara patent plus other patents from other inventors?

THE COURT: Yeah. I mean, I'll hear argument as to Exhibit A if they actually put it on their list, which we'll hear a proffer as to how that might be relevant at that point in time. But if they do put it on their list and you want to object, talk about what relevance it has if we take the dollar figures out, if there is any.

MR. CHEN: Thank you.

THE COURT: All right.

Counsel?

MR. PICKENS: Your Honor, if I may, I -- the only counterpart I would offer on that is to the extent that they seek to cross-examine Mr. Gabara about his $200,000 patent sale, I do think that opens the door to the amount because they've put that directly in issue, how much his patents are worth.

THE COURT: Yeah. What's the relevance of the

$200,000 patent sale?

MR. CHEN: There's a distinction here. So our damages expert -- there's two distinctions here. One, that is a TrackThings patent. These other patents in Exhibit A are not TrackThings' patents.

Number 2, we have an expert opinion regarding that $200,000 patent sale. There are no expert opinions at all on these other nonasserted patents that are not TrackThings' patents. It's relevant to damages.

THE COURT: Do I have that expert opinion in my materials here?

MR. CHEN: I'm checking, Your Honor.

MR. PICKENS: It is somewhere.

Your Honor, if I may?

THE COURT: Yes.

MR. PICKENS: It's in Exhibit D to the opposition brief to Netgear's Motion in Limine 2.

THE COURT: Okay. So that's -- I'm looking at Exhibit 14B.

MR. CHEN: Paragraph 16 on Page 6.

THE COURT: I'm not -- yeah, we're lost here. Can we have it handed up?

MR. PICKENS: May I approach, Your Honor?

THE COURT: Yes.

And so let me hear from Defendant. What is the

10:58:32 relevance to this opinion that TrackThings' revenues from
10:58:35 selling or licensing of patents totals $200,000 over its
10:58:39 history? You're trying to suggest that the patents aren't
10:58:44 viable?

10:58:45 MR. CHEN: It's relevant to the *Georgia-Pacific*
10:58:47 factors, Your Honor. And so we have an expert opinion
10:58:49 saying that the only patent that ever has had any
10:58:52 transaction -- that's a TrackThings patent was, in fact,
10:58:56 purchased for $200,000. So that's, you know, a factual
10:59:01 distinction over the unasserted patents that are not
10:59:03 TrackThings' patents that no expert has opined on.

10:59:05 THE COURT: And that $200,000, that is not any
10:59:08 of the patents at issue in this case?

10:59:09 MR. CHEN: That's correct.

10:59:10 THE COURT: Okay.

10:59:11 MR. CHEN: Yes.

10:59:11 THE COURT: All right. So on this point, I
10:59:13 agree with Plaintiff that that evidence should not be coming
10:59:17 in. I think that's a logical conclusion from how I ruled
10:59:25 against Plaintiff on the other issue. So we're not going to
10:59:27 hear about the tens of millions of dollars of his licensed
10:59:29 patents and we're not going to hear about the $200,000 of
10:59:33 the patent sale, none of which have any relation to the
10:59:39 patents at issue in this case.

10:59:41 Okay. All right. Let's talk about the Pretrial

Order.

I appreciate that the parties included our practice for getting us the electronic copies of the exhibits. For the exhibits that are going to go back to the jury room, the parties need to make sure that we have a binder of only the exhibits that were admitted to go back to the jury room and that needs to be ready to go by the end of the Court reading the final jury instructions.

If there are any native files or any videos that were admitted into evidence, those need to be loaded onto a clean laptop or on a flash drive provided with a clean laptop that we can send back to the jury.

There was a dispute about Paragraph 30. I'm not sure exactly what the dispute is here. The way that I see this going is that we've got lists of what exhibits are going to go with what witness that are going to get exchanged. If one side thinks that there's going to be an exhibit used for a witness, but that witness doesn't -- can't provide a foundation for, we can hear that argument in the morning.

Is there any other argument about this?

MR. GARDNER: Eamonn Gardner on behalf of Netgear, Your Honor.

No, I think that, you know, we just want the -- the typical procedures followed, right, that they will have

to lay a foundation for -- or have a witness that's capable of laying a foundation for evidence that's going to be admitted in Court.

You know, I think that the -- the statement that -- that they have in here that it's offered into evidence in trial and has no objections, it's not clear to me what that means, right. Like if they're proposing that a witness would be the sponsoring witness for this who we don't think can lay an evidentiary foundation, then I guess we do have an objection. In that -- in that sense, the language becomes somewhat moot. But surely it can't be the case that we can't object to a witness being able to sponsor evidence that that witness is not capable of --

THE COURT: Right. But you'll know that when you get their exhibit list from them. So we'll hear that the morning of trial?

MR. GARDNER: Yes.

THE COURT: Okay. Is there any dispute about that from Plaintiff's side then?

SPEAKER: No, Your Honor. We were simply just trying to clarify we wouldn't have to be entertaining new objections live at trial as to sponsoring witnesses.

THE COURT: Right. So, you know, we all know how this is going to go. Can you turn to Tab 3 in your binder? What is this document? It's such and such. I

mean, that's --

MR. PICKENS: Correct.

THE COURT: -- going to be foundation; right?

MR. GARDNER: Correct.

THE COURT: I don't think we're going to have any gotchas or anything like that with respect to this.

All right. Let's turn to Paragraph 31. I'm not sure what the dispute here is, either. Maybe there is just some worry about what items might be referring to. Is that --

MR. GARDNER: I'll start on this one, Your Honor.

So we've included the ending language in Paragraph 31, "that may not be admitted into evidence," and TrackThings' counsel has objected to that. And I just want to be clear that this is the default of the federal rules.

So under Rule 26(a)(3)(A), evidence that they are obligated to include on their exhibit list, any evidence that would be admitted at trial, other than evidence that's used solely for impeachment; right?

So if it is solely for impeachment, they don't have to list it, but then it doesn't come in as evidence. It can only be used for purposes of impeachment. That is the default in the federal rules. If they don't include it on their exhibit list, they can't sort of surprise us with

11:04:13 it and get it admitted into evidence. That's the choice.

11:04:16 So this is the default standard under the federal rules. That's the rules. The fact that in *Sight Sciences* two parties may have agreed that you can, in fact, admit evidence that's used during a cross-examination was a choice between two parties in an unrelated litigation. It is surely not precedent that two parties in an unrelated litigation agreed to something that we are not willing to agree to.

11:04:45 The federal rules govern if they would like to admit evidence into the record then they needed to include it on their exhibit list. If they didn't include it on their exhibit list, it's used solely for purposes of impeachment and doesn't come in.

11:05:00 THE COURT: All right. Thank you.

11:05:01 All right. So let me just clarify what our practice is, which is that nothing is getting admitted into evidence if it's not on a party's exhibit list. So that's just what it is.

11:05:19 Does anybody -- is there any dispute once I've said that?

11:05:22 MR. PICKENS: No. Your Honor, candidly, I think we may have missed the boat with each other on the meet and confer because the part that was just discussed was intended to be reflected in our blue line of what we'll offer into

evidence. I think our language gave exactly the same thing.

THE COURT: Okay. All right. So we all agree.

MR. PICKENS: And because there's other items and there's videos and physical content on the exhibit list, so that was -- we just didn't want to exclude --

THE COURT: Okay. Yeah. Totally.

MR. PICKENS: -- physicals and videos.

THE COURT: We all understand how we're going to go on that one.

All right. We've got a footnote on Page 12. Is that a dispute?

MR. PICKENS: Your Honor, Robert Pickens for Plaintiff TrackThings.

Yes, although I think Netgear may have provided its position in court with the jury instructions. This was an issue that came up in negotiating the final jury instructions, but we felt it would be remiss not to raise it now because it concerns the appropriate content of witness testimony at trial.

So in -- in connection with the jury instructions and the exchange of witness lists, Netgear disclosed their in-house counsel, Anne Lamb, as a witness. And in the jury instructions for induced infringement, there are instructions that concern whether Netgear's beliefs as to noninfringement are an issue that can excuse induced

infringement.

And the concern here is that we don't have a full understanding from Netgear exactly how they plan to present their case, and for good reason. But our concern is during fact discovery we sought discovery into Netgear's opinions regarding noninfringement and what we received in return in response -- for example, in response to our interrogatories was an objection they weren't going to rely on advice of counsel defense, which is great, that's not entirely co-extensive necessarily. But that they weren't going to answer the interrogatory on privileged grounds, they weren't aware of any non-privileged information.

And the problem here is that if they now want to come in through Anne Lamb, or through any other witness, and say Netgear -- the corporation, Netgear, has a belief they don't infringe, well, there's a problem there because they're using it as a sword and shield. They didn't give us the discovery in fact discovery. They said, Any information regarding our infringement opinions, that's privileged.

And now if they were to have Anne Lamb come in, that's particularly problematic because they didn't provide the discovery at all and she's in-house counsel. So she's going to come in and say, I'm in-house counsel. I'm an attorney. I looked at this. No infringement here. I believed it all along. That's -- that's quite problematic.

But it's also even problematic to come in and have a fact witness say it because, again, they could have a fact witness, "I don't believe it," but the question for induced infringement is not does the engineer believe it, it's does the corporation believe it. And they've protected part of that corporate knowledge by objecting on privileged ground. Not only in interrogatory, there was also a 30(b)(6) topic that asked similar content and my understanding is there was never a witness put up on it.

And so our concern is that they are going to come in and say there's this good faith belief, but we didn't have an opportunity to explore it and it's too late now with trial in a couple of weeks.

THE COURT: So I understand what the argument is. So there's a couple things going on here.

So you didn't have the opportunity to examine the basis for the belief that they were entitled to claim privilege over, but are you also saying you didn't know it was their position that they had a good faith belief that they didn't infringe?

So did they ever -- so you asked them a question: Did you believe you didn't infringe? And they never said we didn't think we infringed. You know, that's...

MR. PICKENS: It was -- it was a broader

contention interrogatory, Your Honor --

THE COURT: Right.

MR. PICKENS: -- that said, you know, give me your bases -- and I have it here, they -- it's a broader contention interrogatory. It's not so specific as to good faith belief of noninfringement, but it was a broader contention interrogatory on their opinions as noninfringement to which we received a privilege objection.

THE COURT: Okay. I understand.

MR. PICKENS: And I'll -- I'm sure -- I'm sure they would like to correct the record in some regards, so I'll cede the podium, unless you have any --

THE COURT: Yeah. Well, I'll ask you follow-up questions if I have any.

MR. PICKENS: Sure.

THE COURT: Thank you.

MR. GARDNER: So I have -- we have a number of issues.

First, this is a MIL that we're arguing as a footnote to a jury instruction -- or I'm sorry -- to a footnote to a witness list where there's no actual disputes in the PTO. So this is completely improper to be arguing this as part of a MIL.

Second, as TrackThings' counsel accurately stated, we have a dispute as to what is the proper legal

instruction and, you know, I don't think that that dispute is for today, Your Honor, although, we're happy to take it on.

There is a dispute as to what legal instruction should be provided on the issue of induced infringement and the parties have a dispute regarding that.

As part of that dispute, counsel has raised that we didn't provide an opinion of counsel. Well, we didn't -- we're not relying on opinion of counsel. We never disclosed one and we don't intend to rely on one at trial; right? That's completely moot.

As to any other witness's ability to talk about whether or not they believe Netgear did not infringe, you know, that's on a witness-by-witness basis that can be addressed properly at trial. For example, they say that no witness disclosed this. They directly asked the question of one of Netgear's witnesses, and he provided them a response and they decided not to follow up on that response. That was their choice. But they directly asked the question. There wasn't a privilege objection that was given to -- in response to that question and the witness answered the question.

So there's absolutely no basis that that witness can't provide the same kind of testimony and elaborate on that testimony because it was TrackThings' counsel's choice

not to follow up with that witness.

THE COURT: But the elaboration of that testimony is not going to be the reason why I thought we didn't infringe is because we --

MR. GARDNER: Yeah.

THE COURT: -- our attorney looked at it; right?

MR. GARDNER: Understood. Understood. Right.

That's true; right? We're not going to -- we're not going to -- we're not going to do a sword and shield; right?

But all of these issues, we're sort of talking about this -- and, again, this is my -- my main concern is we're talking about something that if they wanted to raise it as a MIL, we could have addressed it. And if they want to raise it as to specific testimony, then the right time to do that is at trial.

THE COURT: Okay.

MR. GARDNER: We do have a dispute regarding the final jury instructions. That's a -- it's a dispute as to what is the legal standard for induced infringement.

And, again, I think that that's probably best handled when Your Honor is ready to handle that.

THE COURT: Okay. All right. Thank you very much.

All right. So I agree that this wasn't the

right way to bring this up.

On the other hand, it is going to get brought up at trial and so it would be good for us to at least know how we're going to proceed.

So everybody should have ready in their trial outlines for each witness if Plaintiff thinks that a witness has stated on the stand that they have a belief about noninfringement, and Plaintiff thinks that that question wasn't answered during discovery because of a privilege objection, then we'll resolve it at that time. I don't have enough information in front of me to say any more than that.

Okay. No matter what, we're not going to have a witness saying that their belief came from information they received from counsel. Everybody agrees about that.

All right. There was a Footnote 7 on Page 15. Netgear's not calling any witnesses by deposition?

MR. GARDNER: That's correct, Your Honor.

THE COURT: Okay. All right.

All right. So the way that we're currently proceeding with impeachment by prior inconsistent testimony is going to be as follows: If a witness testifies inconsistently with one of their prior statements, and counsel's ready to impeach, Counsel, of course, you're free to ask the same question that you asked during the deposition; right? That's not -- that's just seeing if the

witness answers the same way. But once you're ready to impeach with the prior statement, counsel should direct Court and counsel to the page and line number of the deposition testimony or the transcript, and we'll give the other side a couple seconds to find it and object if they're going to object. And then once I say, "You may proceed, if there's -- if there's no objection," you can read the question and answer, and then you can say, "Did I ask that question and did you give that answer?" And, obviously, it's got to be inconsistent.

We've tried different ways of doing it, and that's the best way we find. You are permitted to put the transcript up on the ELMO when I say "You may proceed," but obviously, we're not introducing the transcript into evidence.

Does anybody have any questions about that? Okay.

The stipulated motions in limine seem fine to us. We'll order those.

The parties agree that we can get this done in four days, and I agree as well. I think the case is probably not going to get to the jury until late in the afternoon on Thursday, so we'll let them hang out here until 6:30 or so. I can tell you this, it does start to get pretty steamy in here and in there after 5:00. So I can't

promise you that they'll want to stay and render a verdict.

I do need to let you know that because of a prior commitment, I have to be on a Zoom panel on September 10th, and so I'll need to recess from 11:45 a.m. to 1:30 p.m. I don't think that's going to set us back so we'll just take a longer lunch that day. I still think we'll be able to get done on Thursday.

Our jury selection procedures were accurately represented in the Pretrial Order.

The voir dire looked fine to us, but I just need to review it one more time. And once I do, I'll post an Order about it. Plaintiff needs to bring 40 copies of the voir dire, paper and pens for the jury for jury selection.

Are the parties amenable to providing the jurors with lunches? All right.

MR. GILMAN: Yes.

MS. LEEPER: Yes.

THE COURT: I hear yes from both sides. So we'll have you coordinate with Mr. Koehler about that.

We'll probably do the charge conference either Tuesday or Wednesday evening after trial is recessed for the day. If you need to get into the courtroom to familiarize yourself with the technology or to set up, coordinate with Mr. Koehler.

If any party needs to seal the courtroom, we

need to hear about it the morning if you think that's going to happen. We don't want any unexpected requests to seal the courtroom. We're going to try to keep the trial as open as possible. So if we can get evidence in without sealing the courtroom, we prefer that.

In Paragraph 104 the parties mentioned just standing up and moving for a judgment as a matter of law. You didn't even need to do that. What you should do is just reserve that until the next break. So if we turn it over to the other side and they start testimony, on the next break we can hear the judgment as a matter of law.

We have our eyes on the preliminary instructions, and we'll try to get those to you as soon as we can.

In light of the Court's rulings today, it seems like some of the disputes in the final jury instructions should drop out. So we're going to ask you to provide an updated version of the final jury instructions which have the remaining disputes in there, and then we can all work from that copy.

All right. Is there anything else we need to address today?

MR. GARDNER: I think this is a very minor point, Your Honor. In Exhibit 3 to the Pretrial Order, which is Netgear's statement of contested facts, we noticed

a minor typo, which is in Exhibit 3, Paragraph 4 on the priority date. It's -- it says the effective filing date of March 1st, 2006 and should say March 1st of 2007, which is when the patent was actually -- or the original patent application was filed.

Do we need to file a corrected version of that?

THE COURT: Counsel?

MR. PICKENS: No, other than noting we disagree with the effective filing date, but not with the typo correction.

THE COURT: Okay. Right. Of course. So we'll so order that correction. Everybody, the Pretrial Order is hereby amended. You know what, we'll just go ahead and note it in the Order we issue later today as well.

Okay. Anything else?

MR. GARDNER: Not from Netgear, Your Honor.

MR. GILMAN: Not from Plaintiffs, Your Honor.

THE COURT: All right. Fantastic.

The only other thing I would say is that if the parties decide that they're able to resolve their disputes without putting it to the jury, if you could just give us a heads-up as soon as you know, that would be helpful to us. We're multi-tasking, and so if we even can get an extra hour of time. For example, if I'm looking at the final jury instructions and I don't need to be, that would be time that

11:21:33 I would love to have back. So just give us a heads-up.

11:21:37 Okay? All right. Thanks very much.

11:21:39 COURTROOM DEPUTY: All rise.

11:22:45 (Court was adjourned at 11:22 a.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Heather M. Triozzi
Certified Merit and Real-Time Reporter
U.S. District Court